No. 23-20290

# United States Court of Appeals
### Fifth Circuit

BEAU KELLEY; ALVIN PEREZ LOPEZ; ANTHONY MARTIN; AUSTIN BRASWELL; CARLOS PEREZ, et al.

*Plaintiffs-Appellants*,

—*vs.*—

ALPINE SITE SERVICES, INCORPORATED,

*Defendant-Appellee*.

**On Appeal from the
United States District Court for the Southern District of Texas
No. 4:19-cv-1152, Hon. George C. Hanks**

**REPLY BRIEF OF APPELLANTS**

CURT HESSE
 Tex. Bar No. 24065414
  curt@mooreandassociates.net

MELISSA MOORE
 Tex. Bar No. 24013189
  melissa@mooreandassociates.net

MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street | Suite 1110
Houston, Texas 77002-1055
Telephone: (713) 222-6775
Facsimile: (713) 222-6739
www.mooreandassociates.net

February 29, 2024

TABLE OF CONTENTS

Page

Table of Contents ........................................................................................ *ii*

Table of Authorities ................................................................................... *iii*

Introduction ................................................................................................. 1

Argument & Authorities ............................................................................. 2

    1. The history of the motor carrier exemption supports Kelley and the other plaintiffs' claim that it does not apply ..................................................................................................... 2

    2. Kelley and the other plaintiffs were not "full-duty" loaders and did not solely or even substantially load motor vehicles or transfer freight between motor vehicles and between the vehicles and the jobsites ....................... 5

    3. Alpine repeatedly mischaracterizes the Department of Labor's findings .................................................................................. 7

Conclusion ................................................................................................. 10

Signature ................................................................................................... 10

Certification Regarding Privacy Redactions ........................................... 11

Certification Regarding Electronic Submission ..................................... 11

Certificate of Service ................................................................................ 12

Certificate of Compliance ........................................................................ 13

# TABLE OF AUTHORITIES

Page

**Cases**

*Allen v. Coil Tubing Servs., LLC*,
  755 F.3d 279 (5th Cir. 2014) ............................................... passim

*Amaya v. Noypi Movers, L.L.C.*,
  741 F. App'x 203 (5th Cir. 2018) .................................................7

*Levinson v. Spector Motor Serv.*,
  330 U.S. 649 (1947) ....................................................................4

*Mitchell v. C & P Shoe Corp.*,
  286 F.2d 109 (5th Cir. 1960) ......................................................4

*Olibas v. Barclay*,
  838 F.3d 442 (5th Cir. 2016) ......................................................6

*Pyramid Motor Freight Corp. v. Ispass*,
  330 U.S. 695 (1947) ....................................................................4

**Statutes**

29 U.S.C. § 213(b)(1) ......................................................................1

29 U.S.C. §§ 201-219 ................................................................3, 4

Motor Carrier Act, Pub. L. 64-255, 49 Stat. 543 (1935) ...............3, 4

**Rules**

5th Cir. R. 25.2.1 ......................................................................... 11

5th Cir. R. 25.2.13 ....................................................................... 11

5th Cir. R. 25.2.5 ......................................................................... 12

5th Cir. R. 32.1 ............................................................................ 13

TABLE OF AUTHORITIES
(continued)

Page

5th Cir. R. 32.3 .................................................................................. 13

Fed. R. App. P. 25(b) ........................................................................ 12

Fed. R. App. P. 25(c) ........................................................................ 12

Fed. R. App. P. 28(a)(10) ................................................................. 13

Fed. R. App. P. 32(a)(5) ................................................................... 13

Fed. R. App. P. 32(a)(6) ................................................................... 13

Fed. R. App. P. 32(a)(7)(B) ............................................................. 13

Fed. R. App. P. 32(f) ........................................................................ 13

Fed. R. App. P. 32(g)(1) ................................................................... 13

**Regulations**

29 C.F.R. §§ 782.2(b)(3)-(4) .............................................................. 6

29 C.F.R. pt. 782 ................................................................................ 1

INTRODUCTION

There is no consistency in the application of 29 U.S.C. § 213(b)(1) and 29 C.F.R. pt. 782 (the "motor carrier exemption") to employees who work in this circuit. The problem arises from the misreading and misapplication of Supreme Court precedent, the motor carrier exemption's implementing regulations and its history. It has resulted in the application of the exemption to employees who are plainly not exempt, and Alpine's own brief underscores the point.

Indeed, if Alpine and the district court are correct, the motor carrier exemption applies to nearly every worker on every construction who loads materials in pickup trucks like this one, a Ford F-350:



The exemption would apply to a mason loading bricks or a carpenter loading lumber or an electrician loading cable or a plumber loading pipe, and it would apply regardless of how frequently they loaded those materials. That cannot be right, and it is not right.

The text, structure, history and purpose of the motor carrier exemption and its implementing regulations—and Supreme Court precedent—have always distinguished between employees of common and private carriers; they have always required that courts compare the relative frequency of an employee's exemption-qualifying duties with their other duties, and they have always, at least for employees of private carriers, required that the application of the motor carrier exemption be determined on a week-by-week basis. If Alpine and the district court are correct—and they are not—it would mean that recent decisions of this Court on which they rely worked a revolution on pre-existing Supreme Court and Fifth Circuit jurisprudence and the Labor Department's implementing regulations. Accordingly, the Court should reverse.

## ARGUMENT & AUTHORITIES

1. **The history of the motor carrier exemption supports Kelley and the other plaintiffs' claim that it does not apply.**[1]

The Motor Carrier Act was enacted in 1935 "to regulate transportation by motor carriers" and was originally enforced by the

---

[1] Judge Dennis has described the history of the motor carrier exemption in great detail. *See*, *Allen v. Coil Tubing Servs., LLC*, 755 F.3d 279, 288-307 (5th Cir. 2014) (Dennis, J., dissenting).

Interstate Commerce Commission ("ICC"). Pub. L. 64-255, §§ 202(a), 203(a)(3), 204, 49 Stat. 543, 543-47 (1935). The Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219, ("FLSA") was passed three years later and originally exempted its from maximum hour—or overtime—requirements "any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, 1935."[2] *Allen*, 755 F.3d at 297 (citations and quotations omitted).

Shortly after passage of the FLSA, the ICC, "noting that the FLSA had made the question of its jurisdiction important," *id.*, released a series of opinions delineating its jurisdiction. In 1941, it determined that it could regulate the qualifications and maximum hours of service for loaders "whose *sole* duties are to load and unload motor vehicles and transfer freight between motor vehicles and between the vehicles and the warehouse[.]" *Id.* at 298 (emphasis added) (citations and quotations omitted); *see also*, *id.* ("In determining that … 'loaders[]' … carry out job duties that affect the safety of transportation, the ICC carefully defined

---

[2] In 1966, the authority to enforce the Motor Carrier Act was transferred from the ICC to the Transportation Department. *Allen*, 755 F.3d at 303.

what it meant by each of [that] term[], delineating who should, and who should not, be considered [a 'loader']"); *see also*, *id*. ("In sum, in 1941, the ICC determined that … 'loaders,' *as thoroughly defined by the Commission*, … carry out duties affecting safety of operation and thus fall under MCA jurisdiction[.]" (emphasis added)).

Six years later, the Supreme Court expressly adopted the ICC's determination vis-à-vis its jurisdiction, under the Motor Carrier Act, to regulate only "full-duty" loaders. *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 673 (1947) ("We see no reason to question [the ICC's] considered conclusion that the activities of full-duty … loaders …, as defined by it, affect safety of operation of the carriers by whom they are employed."). In another case that same year, the Supreme Court explained that a loader does not qualify for the FLSA's motor carrier exemption unless his duties "either as a whole or in substantial part, come within the Commission's definition of the work of a 'loader.'" *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 707 (1947); *see also*, *id*. at 708-709; *Mitchell v. C & P Shoe Corp.*, 286 F.2d 109, 114 (5th Cir. 1960) (the motor carrier exemption only applies to employees who "devote[d] a 'substantial' part of their work to" exemption-qualifying activities).

"And that, according to the Supreme Court, is where things stand today." *Allen*, 755 F.3d at 300. "Since 1947, the Supreme Court has never again addressed the motor carrier exemption." *Id*. And the Labor Department's motor carrier exemption regulations "do nothing more than describe the jurisdictional principles that followed from the above-discussed ICC jurisdictional pronouncements and case law, primarily the Supreme Court's 1947 [decisions]." *Id*. at 302; *see also*, *id*. at 303 (explaining that the ICC's "1930s and 1940s regulations still represent the most recent expression of the official agency view of the scope of MCA jurisdiction[]"). No decision of this Court could have changed any of that.

**2. Kelley and the other plaintiffs were not "full-duty" loaders and did not solely or even substantially load motor vehicles or transfer freight between motor vehicles and between the vehicles and the jobsites.**

Alpine's own brief underscores the problem with applying the motor carrier exemption to employees who work in this circuit and in particular for private motor carriers. Alpine is a self-described construction company (Alpine Br. at 2-3) that employs construction workers like Kelley and the other plaintiffs (*id*. at 4, 8). It admits that they do not spend all or even a substantial portion of their time loading commercial motor vehicles. (*See generally*, *id*. at 31-36.) It, though, has

doubled-down on its atextual argument that the Labor Department's regulations and the Supreme Court do not mean what they say. (*See*, *id.* at 39-42.)

For example, Alpine says that it does not need to quantify how much time, for example, its welders spend loading commercial vehicles compared to welding, the job for which they were hired. (*See*, Alpine Br. at 31-32.) It also says that, even though Supreme Court precedent forecloses an evaluating the motor carrier exemption on a class-wide basis (*see generally*, *Allen*, 755 F.3d at 288-307 (Dennis, J., dissenting)), it can. (*See*, Alpine Br. at 36.) And it says that even though Labor Department regulations expressly require a workweek analysis (*see*, 29 C.F.R. §§ 782.2(b)(3)-(4)), they need not be followed. (*See*, Alpine Br. at 45-49.)

Alpine also claims that it does *not* need evidence that specifically ties the individual plaintiffs' loading activities to interstate commerce (*see*, *id.* at 42-45) even though this Court has explained that employers must do so to establish the motor carrier exemption. *Olibas v. Barclay*, 838 F.3d 442, 446 (5th Cir. 2016) ("Notably, at trial, Native could not produce drivers' logs, bills of lading, time sheets or other documents *conclusively showing interstate travel* by the drivers."(emphasis added)); *Amaya v. Noypi*

*Movers, L.L.C.*, 741 F. App'x 203, 206-207 (5th Cir. 2018); *id*. at 206 (explaining that evidence must "tie the loading work done by [the plaintiffs] *specifically* to interstate commerce[]"(emphasis added)).

Fidelity to text and binding precedent foreclose those arguments. And the legal authorities on which Alpine relies to support its argument that a construction company employing construction workers need not pay overtime do not apply to private carriers like Alpine; they apply to common carriers. (*See generally*, Appellants' Br. at 11-23.) The Court should reverse.

**3. Alpine repeatedly mischaracterizes the Labor Department's findings.**

In support of its position, Alpine claims that the Labor Department "determined the motor carrier exemption applied … ." (Alpine Br. at 5-6.) That is demonstrably false. (*See, e.g.*, ROA.5014-15 ("The subject's claim … that all non-office personnel are exempt under section 13(b)(1), motor carrier, is denied for the following persons; primarily because these employees were welders/cutters of pipe or laborers … ."); ROA.5016-17.) In fact, the Labor Department's investigative report align with Kelley and the other plaintiffs' arguments (Appellants' Br. at 11-23) that a more exacting standard applies to private carriers than does common carriers.

(*See*, ROA.5015 ("[A] private carrier's employees are only exempt *in those weeks* in which the employee engages in safety affecting duties … ." (emphasis added)); ROA.5017 (Labor Department "requested detailed documentation regarding who traveled out of State where [and] when[]"); *id*. ("[F]or private carriers the exemption applies only in those weeks when the employee engages in safety affecting work in interstate commerce, that specific details must be provided in order to consider the exemption."); *id*. (investigator "reiterated the regulation requirements for a private carrier and request for detailed information for each employee they want considered for the exemption[]"); *id*. ("Some loading could come under the exemption but only in the case of the load making an interstate trip. The subject claims that employees at a work site loading any pipe would come under the exemption; again details are required to see which employees meet the criteria. Loading pieces of pipe unto (sic) a welding truck where the weight of the truck plus installed welding equipment leaves little room for the pieces of pipe whose weight is a small fraction of the total, would not constitute safety affecting work.").

In other words, the Labor Department reports do not support Alpine's position. The Court should reverse.

CONCLUSION

The Court should reverse and restore consistency to its motor carrier exemption jurisprudence.

> Respectfully Submitted,
>
> MOORE & ASSOCIATES
> Lyric Centre
> 440 Louisiana Street | Suite 1110
> Houston, Texas 77002-1055
> Telephone: (713) 222-6775
> Facsimile: (713) 222-6739
>
>
> By: s/ Curt Hesse
>   Curt Hesse
>   Tex. Bar No. 24065414
>   curt@mooreandassociates.net
>
> *Counsel for Appellants*

#### CERTIFICATION REGARDING PRIVACY REDACTIONS

As required by 5th Cir. R. 25.2.13 and the ECF Filing Standards for the United States Court of Appeals for the Fifth Circuit, I certify that all required privacy redactions have been made.

s/ Curt Hesse
_____
Curt Hesse

#### CERTIFICATION REGARDING ELECTRONIC SUBMISSION

As required by 5th Cir. R. 25.2.1 and the ECF Filing Standards for the United States Court of Appeals for the Fifth Circuit, I certify that the electronic submission of this document is an exact copy of the paper document and that it has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

s/ Curt Hesse
_____
Curt Hesse

## CERTIFICATE OF SERVICE

As required by Fed. R. App. P. 25(b) and 5th Cir. R. 25.2.5, I certify that I served a copy of this document on all parties or their counsel of record—who are listed below—in accordance with Fed. R. App. P. 25(c) on the date indicated as follows:

> Mr. Levon Hovnatanian
> hovnatanian@mdjwlaw.com
> MARTIN, DISIERE, JEFFERSON & WISDOM, LLP
> 808 Travis Street, Suite 1100
> Houston, Texas 77002
> Facsimile: (713) 222-0101
> *Counsel for Appellee Alpine Site Services, Inc.*
> ☐ personal delivery
> ☐ mail
> ☐ third-party commercial carrier
> ☐ electronic means
> ☒ CM/ECF system

| February 29, 2024 | s/ Curt Hesse |
|---|---|
| Date | Curt Hesse |

CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. P. 28(a)(10), 32(g)(1) and 5th Cir. R. 32.3, I certify that this document complies with the:

1. type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):
   - ☒ this document contains one thousand six hundred three (1,603) words, or
   - ☐ this brief uses a monospaced typeface and contains [*state the number of*] [#,###] lines of text.

2. typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:
   - ☒ this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Williams Caslon Text font (12-point Williams Caslon Text font for footnotes in accordance with 5th Cir. R. 32.1), or
   - ☐ this brief uses a monospaced typeface and contains [*state the number of*] [#,###] lines of text.

s/ Curt Hesse<br>
Curt Hesse