No. 23-20290

# United States Court of Appeals

### FIFTH CIRCUIT

BEAU KELLEY; ALVIN PEREZ LOPEZ; ANTHONY
MARTIN; AUSTIN BRASWELL; CARLOS PEREZ, et al.,

*Plaintiffs-Appellants,*

*—vs.—*

ALPINE SITE SERVICES, INCORPORATED,

*Defendant-Appellee.*

*On Appeal from the*
*United States District Court for the Southern District of Texas*
*No. 4:19-cv-1152, Hon. George C. Hanks*

## APPELLANTS' PETITION FOR REHEARING EN BANC

CURT HESSE
  Tex. Bar No. 24065414
    curt@mooreandassociates.net

MELISSA MOORE
  Tex. Bar No. 24013189
    melissa@mooreandassociates.net

August 22, 2024

MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street | Suite 1110
Houston, Texas 77002-1055
t (713) 222-6775
f (713) 222-6739
www.mooreandassociates.net

## CERTIFICATE OF INTERESTED PERSONS

As required by Fed. R. App. P. 26.1, 28(a)(1) and 5th Cir. R. 28.2.1, 28.3(a), 35.2.1the undersigned counsel of record for Plaintiff-Appellant Beau Kelley, et al. certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of the United States Court of Appeals for the Fifth Circuit may evaluate possible disqualification or recusal.

| | |
|---|---|
| Appellants | Beau Kelley |
| | Alvin Lopez |
| | Anthony Martin |
| | Austin Braswell |
| | Carlos Perez |
| | Daniel Scherr |
| | Leo Butler, Jr. |
| | Rex Luman |
| | John Szatko |
| | Leonardo Hernandez, Jr. |
| | Michael Russell |
| | Angelo Molino |
| | Anthony Vronko, III |
| | Thomas Hamby |
| | David Jackson |
| | Sean Pohl |
| | Brady Paholek |
| | Abdal Chavez |
| | Christopher Singletary |
| | James Price |
| | Colin Locklier |
| | Justin Edwards |
| | Brandon Holzbach |
| | Ashton McCasland |
| | Ismael Andrade |
| | Rosbel Overa |
| | Arnoldo Rodriguez |
| | Enrique Rodriguez |
| | Daniel Rodriguez |
| | Tommy Barnes |

| Counsel for Appellants | Curt Hesse |
| --- | --- |
| | Melissa Moore |
| | MOORE & ASSOCIATES |
| | Lyric Centre |
| | 440 Louisiana Street, Suite 1110 |
| | Houston, Texas 77002-1055 |
| | www.mooreandassociates.net |
| | |
| Appellee | Alpine Site Services, Incorporated |
| | |
| Counsel for Appellee | Levon Hovnatanian (appeal only) |
| | MARTIN, DISIERE, JEFFERSON & WISDOM, LLP |
| | 808 Travis Street, Suite 1100 |
| | Houston, Texas 77002 |
| | www.mdjwlaw.com |
| | |
| | Steven Watkins |
| | BRADLEY, DEVITT, HAAS & |
| | WATKINS, P.C. |
| | 2201 Ford Street |
| | Golden, Colorado 80401 |
| | www.goldenlawyers.com |
| | |
| | Claire Deason (trial only) |
| | LITTLER MENDELSON PC |
| | 80th South 8th Street, Suite 1300 |
| | Minneapolis, Minnesota 55402 |
| | www.littler.com |
| | |
| | David Jordan (trial only) |
| | LITTLER MENDELSON PC |
| | 1301 McKinney Street, Suite 1900 |
| | Houston, Texas 77010 |
| | www.littler.com |
| | |
| | Nicole LeFave (trial only) |
| | LITTLER MENDELSON PC |
| | 100 Congress Avenue, Suite 1400 |
| | Austin, Texas 78701 |
| | www.littler.com |

_____

s/ Curt Hesse

Curt Hesse

As Judge Oldham put it just a few weeks ago, this Court's jurisprudence on the exemption from the overtime requirements of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219, ("FLSA") under 29 U.S.C. § 213(b)(1) and 29 C.F.R. § 782.6 (the "motor carrier exemption") is "confusi[ng]" and "incoheren[t]," with "multiple, unmanageable standards[,]" including "an eight-factor balancing test to assess" whether an employee has a "reasonable expectation" of interstate transportation. *Escobedo v. Ace Gathering, Inc.*, ___ F.4th ___, 2024 U.S. App. LEXIS 19025, at *11-*15 (5th Cir. Jul. 31, 2024) (Oldham, J., concurring in the judgment). Tests for applying the exemption also vary based on an employee's position (as driver, driver's helper, loader or mechanic) and, in particular with respect to this case, on whether the employee is employed by a common or private carrier together with the relative frequency of the employee's exemption-qualifying duties and his other duties. *See, e.g.*, 29 C.F.R. § 782.2(b)(3).

The problem arises from the misreading and misapplication of Supreme Court precedent, the motor carrier exemption's implementing regulations and its history and has resulted in an application of the motor carrier exemption in this Circuit that is far too broad and that exempts vast swaths of employees with no meaningful connection to interstate transportation. *See*, *Allen v. Coil Tubing Servs., LLC*, 755 F.3d 279, 288-307 (5th

Cir. 2014) (Dennis, J., dissenting) (discussing history of motor carrier exemption).

The text, structure, history and purpose of the motor carrier exemption and its implementing regulations—and Supreme Court precedent—have always distinguished between employees of common and private carriers; they have always required that courts compare the relative frequency of an employee's exemption-qualifying duties with their other duties, and they have always, at least for employees of private carriers, required that the application of the motor carrier exemption be determined on a week-by-week basis. *See, e.g.*, *id*. And if the panel's decision is correct, it would mean that recent decisions of this Court worked a revolution on pre-existing Supreme Court and Fifth Circuit jurisprudence and the Labor Department's implementing regulations for the motor carrier exemption.

The Court should rehear this case en banc to restore consistency to this significant area of the law and because the panel's decision that construction workers who occasionally or sporadically loaded scrap or waste on flatbed trailers were exempt under the motor carrier exemption conflicts with: (1) the Supreme Court's decision in *Levinson v. Spector Motor Serv.*, 330 U.S. 649 (1947); (2) the Supreme Court's decision in *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695 (1947); (3) this Court's decision in *Mitchell v. C & P Shoe Corp.*, 286 F.2d 109 (5th Cir. 1960); (4) this Court's decision in *Olibas*

*v. Barclay*, 838 F.3d 446 (5th Cir. 2016) and (5) this Court's decision in *Amaya v. Noypi Movers, L.L.C.*, 741 F. App'x 203 (5th Cir. 2018).

Because of these conflicts, consideration by the full Court is necessary to secure and maintain uniformity of the Court's decisions. Consideration by the full court is also necessary because these exceptionally important employment-law issues are frequently recurring and because the panel's decision conflicts with authoritative decisions from other courts of appeals and authority promulgated by the Department of Labor. *See*, Fed. R. App. P. 35(b)(1); 5th Cir. R. 35.2.2.

# TABLE OF CONTENTS

Page

Certificate of Interested Persons ........................................................ *i*

Grounds for Rehearing En Banc ..................................................... *iii*

Table of Contents ............................................................... *vi*

Table of Authorities ........................................................... *vii*

Statement of the Issue .............................................................. 1

Statement of the Course of Proceedings ......................................... 1

Statement of Facts .................................................................. 3

Reasons for Granting the Petition ............................................... 4

    1.   The panel's decision squarely conflicts with decisions of the United States Supreme Court ............................................. 4

    2.   The panel's decision squarely conflicts with decisions of this Court ........................................................................ 6

    3.   The panel erred by applying the motor carrier exemption's relaxed common carrier test to determine whether the exemption applied, even though Alpine was a private (as opposed to common) carrier ............................................. 7

    4.   The issues presented are important and frequently recurring ................................................................... 11

Conclusion ....................................................................... 12

Signature ........................................................................ 13

Certification Regarding Electronic Submission ............................... 14

Certificate of Service ........................................................... 15

Certificate of Compliance ..................................................... 16

**TABLE OF AUTHORITIES**

Page

**Cases**

*Allen v. Coil Tubing Servs., LLC,*
755 F.3d 279 (5th Cir. 2014) ..................................................... *iv*, 4, 5, 6

*Amaya v. Noypi Movers, L.L.C.,*
741 F. App'x 203 (5th Cir. 2018) ..................................................... *v*, 6, 10

*Escobedo v. Ace Gathering, Inc.,*
___ F.4th ___,
2024 U.S. App. LEXIS 19025 (5th Cir. 2024) .................................. *iii*, 11

*Escobedo v. Ace Gathering, Inc.,*
No. 23-20494 (5th Cir.) ........................................................................... 11

*Levinson v. Spector Motor Serv.,*
330 U.S. 649 (1947) ........................................................................ *iv*, 5

*Mitchell v. C & P Shoe Corp.,*
286 F.2d 109 (5th Cir. 1960) ............................................................ *iv*, 5

*Olibas v. Barclay,*
838 F.3d 446 (5th Cir. 2016) ............................................................. *v*, 10

*Pyramid Motor Freight Corp. v. Ispass,*
330 U.S. 695 (1947) ...................................................................... *iv*, 5, 6

**Statutes**

29 U.S.C. § 213(b)(1) ................................................................... *iii*, 7

29 U.S.C. §§ 201-219 ........................................................... passim

Motor Carrier Act,
Pub. L. 64-255, 49 Stat. 543 (1935) ................................................ passim

**Rules**

5th Cir. R. 25.2.1 ...................................................................... 14

5th Cir. R. 25.2.13 ...................................................................... 14

Page

5th Cir. R. 25.2.5 ........................................................................ 15

5th Cir. R. 28.2.1 ........................................................................... *i*

5th Cir. R. 28.3(a) .......................................................................... *i*

5th Cir. R. 32.1 ............................................................................ 16

5th Cir. R. 32.3 ............................................................................ 16

5th Cir. R. 35.2.2 ........................................................................... *i*

5th Cir. R. 35.2.4 .......................................................................... 1

Fed. R. App. P. 25(b) .................................................................... 15

Fed. R. App. P. 25(c) .................................................................... 15

Fed. R. App. P. 26.1 ....................................................................... *i*

Fed. R. App. P. 28(a)(1) ................................................................. *i*

Fed. R. App. P. 28(a)(10) ............................................................. 16

Fed. R. App. P. 32(a)(5) ............................................................... 16

Fed. R. App. P. 32(a)(6) ............................................................... 16

Fed. R. App. P. 32(f) .................................................................... 16

Fed. R. App. P. 32(g)(1) ............................................................... 16

Fed. R. App. P. 35(b)(2)(A) .......................................................... 16

## Regulations

29 C.F.R. § 782.2(b)(3) ...........................................................*iii*, 8, 9

29 C.F.R. § 782.2(b)(4) ................................................................. 9

29 C.F.R. § 782.2(c)(1) ................................................................. 8

**TABLE OF AUTHORITIES**
(continued)

Page

29 C.F.R. § 782.6 ............................................................................*iii*

**STATEMENT OF THE ISSUE**

In accordance with 5th Cir. R. 35.2.4, the following issue merits en banc consideration:

> whether the motor carrier exemption to the FLSA, which applies to transportation workers employed as "full-duty" loaders of common carriers and whose job duties directly affected the operational safety of commercial motor vehicles travelling on public highways in interstate commerce, also applies to construction workers (for example, welders and general laborers) working on construction sites and employed by a construction company also registered as a private motor carrier who occasionally or sporadically loaded scrap or waste on flatbed trailers that may or may not travel in interstate commerce.

**STATEMENT OF THE COURSE OF PROCEEDINGS**

Kelley and the other plaintiffs, who were ordinary, everyday construction workers, sued for unpaid overtime under the FLSA, which contains an exemption for "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of [the Motor Carrier Act.]" 29 U.S.C. § 213(b)(1). Their employer, Alpine Site Services, Inc. (referred to as "Alpine"), a construction company that installs "engineered screwpiles" for malls, commercial buildings, condos, resorts, refineries and natural gas plants, claimed that it did not have to pay overtime to Kelley and the other plaintiffs because they were subject to regulation by the Secretary of Transportation

as provided for in 29 U.S.C. § 213(b)(1)—in other words, that they were transportation rather than construction workers.

After a six-day bench trial, the district court agreed and entered judgment in favor of Alpine. On appeal, Kelley argued, among other things, that the district court erred by applying the motor carrier exemption's relaxed common carrier test to determine whether the exemption applied, even though Alpine was a private (as opposed to common) carrier. He also argued that the district court erred because, as a matter of law, the Secretary of Transportation can only regulate—and, therefore, the exemption only applies to—"full-duty" loaders, and the evidence undisputedly showed that he and the other plaintiffs were construction workers and not "full-duty" loaders.

A panel of this Court affirmed in a published decision. It acknowledged the requirement that, for the exemption to apply, Kelley and the other plaintiffs must be "full-duty" loaders, slip op. at 3, and devote a "substantial part" of their time to loading, *id.*, but explained that this Court does "not require a particularly high concentration of [exemption-]qualifying work[,]" *id.* at 4. Furthermore, according to the panel, the exemption applies "in all work weeks, even those in which the employee performs only non-safety-affecting duties," *id.* at 5, so long as the employee might be "called upon in the ordinary course of their work to perform[]" exemption-qualifying work, *id.*

The panel's decision is reported at ___ F.4th ___ and available at 2024 U.S. App. LEXIS 19967 and 2024 WL 3717137. The district court's decision is available at 2023 U.S. Dist. LEXIS 16621 and 2023 WL 1437702.

## STATEMENT OF FACTS

Alpine is a construction—not transportation—company that installs "engineered screwpiles [that] are well[-]suited for applications where the ground is not suitable for conventional footings." *See*, Alpine Site Services, Inc.—Home (https://alpinesites.com/) (last visited Jan. 25, 2022). Kelley and the other plaintiffs were employed by Alpine as laborers, welders, and construction team members. They worked on construction sites and were primarily responsible for installing engineered screwpiles into the ground using heaving machinery and, once installed, cutting them off to the proper elevation and welding a metal plate to the top of them.

They spent the overwhelming majority of their time engaged in construction-related activities and very little time loading anything. In some weeks, Kelley and the other plaintiffs did not load anything. They did not receive any formal training (or received very little training) on compliance with Department of Transportation regulations or load securement. In other words, Kelley and the other plaintiffs at most sporadically provided the physical labor necessary to load materials or equipment on commercial vehicles. They did not know the destination of any of the trailers that they

loaded, and Alpine admitted that there were no records to show which of its employees loaded which of its trailers or where they were going, whether interstate or intrastate.

REASONS FOR GRANTING THE PETITION

**1. The panel's decision squarely conflicts with decisions of the United States Supreme Court.**

The Motor Carrier Act was enacted in 1935 "to regulate transportation by motor carriers" and was originally enforced by the Interstate Commerce Commission ("ICC"). Pub. L. 64-255, §§ 202(a), 203(a)(3), 204, 49 Stat. 543, 543-47 (1935). The FLSA was passed three years later and originally exempted its from maximum hour—or overtime—requirements "any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, 1935."[1] *Allen*, 755 F.3d at 297 (citations and quotations omitted).

Shortly after passage of the FLSA, the ICC, "noting that the FLSA had made the question of its jurisdiction important," *id.*, released a series of opinions delineating its jurisdiction. In 1941, it determined that it could regulate the qualifications and maximum hours of service for loaders "whose *sole* duties are to load and unload motor vehicles and transfer freight between

---

[1] In 1966, the authority to enforce the Motor Carrier Act was transferred from the ICC to the Transportation Department. *Allen*, 755 F.3d at 303.

motor vehicles and between the vehicles and the warehouse[.]" *Id.* at 298 (emphasis added) (citations and quotations omitted); *see also*, *id.* ("In determining that … 'loaders[]' … carry out job duties that affect the safety of transportation, the ICC carefully defined what it meant by each of [that] term[], delineating who should, and who should not, be considered [a 'loader']"); *see also*, *id.* ("In sum, in 1941, the ICC determined that … 'loaders,' *as thoroughly defined by the Commission*, … carry out duties affecting safety of operation and thus fall under MCA jurisdiction[.]" (emphasis added)).

Six years later, the Supreme Court expressly adopted the ICC's determination vis-à-vis its jurisdiction, under the Motor Carrier Act, to regulate only "full-duty" loaders. *Levinson*, 330 U.S. at 673 ("We see no reason to question [the ICC's] considered conclusion that the activities of full-duty … loaders …, as defined by it, affect safety of operation of the carriers by whom they are employed."). In another case that same year, the Supreme Court explained that a loader does not qualify for the FLSA's motor carrier exemption unless his duties "either as a whole or in substantial part, come within the Commission's definition of the work of a 'loader.'" *Pyramid Motor Freight Corp.*, 330 U.S. at 707; *see also*, *id.* at 708-709; *C & P Shoe Corp.*, 286 F.2d at 114 (the motor carrier exemption only applies to employees who "devote[d] a 'substantial' part of their work to" exemption-qualifying activities). "And that, according to the Supreme Court, is where things stand

today." *Allen*, 755 F.3d at 300. "Since 1947, the Supreme Court has never again addressed the motor carrier exemption." *Id*.

The panel's decision that this Court does "not require a particularly high concentration of [exemption-]qualifying work[,]" slip op. at 4, for the motor carrier exemption to apply directly conflicts with the Supreme Court's decisions that a much higher concentration of exemption-qualifying work— "either as a whole or in substantial part[]" of the employee's duties—is required. *Pyramid Motor Freight Corp.*, 330 U.S. at 707; *see also*, *id*. at 708-709; *C & P Shoe Corp.*, 286 F.2d at 114. To correct this error, the petition for rehearing en banc should be granted.

**2. The panel's decision squarely conflicts with decisions of this Court.**

In *Olibas*, this Court explained that employers must specifically tie an individual plaintiff's loading activities to interstate commerce to establish the motor carrier exemption. *Olibas*, 838 F.3d at 446 ("Notably, at trial, Native could not produce drivers' logs, bills of lading, time sheets or other documents *conclusively showing interstate travel* by the drivers." (emphasis added)). In *Amaya*, a case involving the application of the motor carrier exemption to loaders, this Court said the same thing. *Amaya*, 741 F. App'x at 206-207; *id*. at 206 (explaining that evidence must "tie the loading work done by [the plaintiffs] *specifically* to interstate commerce[]"(emphasis added)).

In this case, though, the panel applied a different standard that permitted Alpine to satisfy its burden to establish the motor carrier exemption with more generalized—and tenuous—evidence. *See*, slip op. at 4-5. Importantly, there was no evidence adduced during trial that "conclusively" or "specifically" tied *any* plaintiff to loading any flatbed trailer with scrap or waste that in fact travelled across state lines. For the panel, though, it was enough that an Alpine employee could be "called upon in the ordinary course of his work to" do so, *id*. at 4. That burden is so low that the exemption swallows the Act. To correct this error, the petition for rehearing en banc should be granted.

**3. The panel erred by applying the motor carrier exemption's relaxed common carrier test to determine whether the exemption applied, even though Alpine was a private (as opposed to common) carrier.**

There are two different tests for determining whether the motor carrier exemption applies: one for private carriers and one for common carriers. The test for common carriers is the least restrictive of the two. It exempts any employee who "might be called upon" to perform safety-affecting activities from the overtime-requirements of the FLSA:

> "As a general rule, if the bona fide duties of the job performed by the employee are in fact such that he is (or, <u>in the case of a member of a group of</u> drivers, driver's helpers, <u>loaders</u>, or mechanics <u>employed by a common carrier</u> and engaged in safety-affecting occupations, <u>that he is likely to be</u>) <u>called upon</u> in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities of the character

described in paragraph (b)(2) of this section, he comes within the exemption in all workweeks when he is employed at such job."

29 C.F.R. § 782.2(b)(3) (emphasis added).

Other sections of that regulation underscore the point:

In a situation considered by the U.S. Supreme Court, approximately 4 percent of the total trips made by drivers employed by a common carrier by motor vehicle involved in the hauling of interstate freight. <u>Since it appeared that the employer, as a common carrier, was obligated to take such business, and that any driver might be called upon at any time to perform such work</u>, which was indiscriminately distributed among the drivers, the Court considered that such trips were a natural, integral, and apparently inseparable part of the common carrier service performed by the employer and driver employees. Under these circumstances, the Court concluded that such work, which directly affected the safety of operation of the vehicles in interstate commerce, brought the entire classification of drivers employed by the carrier under the power of the Interstate Commerce Commission to establish qualifications and maximum hours of service, so that <u>all were exempt even though the interstate driving on particular employees was sporadic and occasional, and in practice some drivers would not be called upon for long periods to perform any such work</u>."

29 C.F.R. § 782.2(c)(1) (emphasis added).

But for private carriers, the test is different and more restrictive. To qualify for the exemption, private carriers must show that their employees were actually and regularly called upon to perform safety-affecting activities. 29 C.F.R. § 782.2(b)(3) ("As a general rule, if the bona fide duties of the job performed by the employee are <u>in fact such that he is</u> … <u>called upon</u> in the

ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities of the character described in paragraph (b)(2) of this section, he comes within the exemption in all workweeks when he is employed at such job." (emphasis added)).

For private carriers, whether the motor carrier exemption applies is determined on a workweek basis. *See*, 29 C.F.R. § 782.2(b)(3) ("As a general rule, if the bona fide duties of the job performed by the employee are … safety-affecting activities … he comes within the exemption in all *workweeks* when he is employed at such job." (emphasis added)); *id.* ("If in *particular workweeks* other duties are assigned to him which result, *in those workweeks*, in his performance of activities directly affecting the safety of operation of motor vehicles in interstate commerce on the public highways, the exemption will be applicable to him *in those workweeks, but not in the workweeks when he continues to perform the duties of the non-safety-affecting job*." (emphasis added)); 29 C.F.R. § 782.2(b)(4) ("Where the same employee of a carrier is shifted from one job to another periodically or on occasion, the application of the exemption to him *in a particular workweek* is tested by application of the above principles to the job or jobs in which he is employed *in that workweek*." (emphasis added)); *id.* ("Similarly, in the case of an *employee of a private carrier* … whose engagement in [safety-affecting] activities occurs sporadically or occasionally as the result of his work assignments at a

particular time, the exemption will apply to him *only in those workweeks when he engages in such activities*." (emphasis added).)

Alpine was a private—not common—carrier. Still, the panel expressly held that the could-be-called-upon standard for common carriers applied. *See*, slip op. at 4-5. It also explained that, contrary to the Labor Department's regulations, the application of the motor carrier exemption did not need to be determined on a workweek basis. *See*, *id*. In doing so, the panel relied on authority from this Court that has erroneously blurred important distinctions between common and private carriers and the test used to determine whether the motor carrier exemption applies and which has led to inconsistent, illogical and even absurd results.

For example, in *Olibas*, this Court affirmed a trial court's judgment that the motor carrier exemption did not apply even though "there was no dispute that [the employer] was a motor carrier engaged in interstate commerce or that the drivers operated trucks over 10,000 pounds." 838 F.3d at 445-46. And in *Amaya*, this Court reversed a trial court's judgment that the motor carrier exemption applied to "furniture-installing employees," 741 F. App'x at 207, who loaded furniture on commercial trucks, some of which plainly traveled interstate. *Id*. Under either of those cases, the exemption should not apply to Kelley and the other plaintiffs.

To correct this error and to restore consistency and common sense to this area of the law, the petition for rehearing en banc should be granted.

**4. The issues presented are important and frequently recurring.**

Other panels of this court are presently considering overlapping issues. *See*, *Escobedo v. Ace Gathering, Inc.*, No. 23-20494 (5th Cir.) In *Escobedo*, Judge Oldham just recently characterized this Court's motor carrier exemption jurisprudence as "confusi[ng]" and "incoheren[t]," with "multiple, unmanageable standards." *Escobedo*, 2024 U.S. App. LEXIS 19025 at *11-*15 (Oldham, J., concurring in the judgment). He is not wrong. And in that case, the plaintiff has already petitioned for rehearing en banc, and the panel promptly requested a response to the petition. Like in this case, the overarching issue in *Escobedo* is whether this Court has applied the motor carrier exemption far too broadly and whether it should "revisit its morass of confusing tests" and whether the Court should "adjust its precedent on the [motor carrier exemption] to reflect the current text of the FLSA and the [Motor Carrier Act]" to provide clarity to this confusing area of the law. Because the issues are frequently recurring, the full Court should consider and definitively resolve them. Alternatively, Kelley agrees with the *Escobedo* plaintiffs' petition for rehearing en banc and requests that his petition be held pending the resolution of that case.

## CONCLUSION

The motor carrier exemption only applies to an "employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of [the Motor Carrier Act.]" If he tried to promulgate regulations regarding the "the qualifications and maximum hours of service" for welders on a construction site who, from time to time, loaded scrap or waste on flatbed trailers that may or may not travel in interstate commerce, the regulations would be immediately challenged because the Motor Carrier Act plainly does not empower him to do so.

Since he cannot do so, the panel erred in determining that Kelley and the other plaintiffs were exempt under the motor carrier exemption to the FLSA. The petition for rehearing en banc should, therefore, be granted, and the judgment of the trial court should be reversed.

Respectfully Submitted,

MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street | Suite 1110
Houston, Texas 77002-1055
Telephone: (713) 222-6775
Facsimile: (713) 222-6739

By: s/ Curt Hesse
     Curt Hesse
     Tex. Bar No. 24065414
     curt@mooreandassociates.net

*Counsel for Appellant Beau Kelley*

**CERTIFICATION REGARDING PRIVACY REDACTIONS**

As required by 5th Cir. R. 25.2.13 and the ECF Filing Standards for the United States Court of Appeals for the Fifth Circuit, I certify that all required privacy redactions have been made.



s/ Curt Hesse

Curt Hesse

**CERTIFICATION REGARDING ELECTRONIC SUBMISSION**

As required by 5th Cir. R. 25.2.1 and the ECF Filing Standards for the United States Court of Appeals for the Fifth Circuit, I certify that the electronic submission of this document is an exact copy of the paper document and that it has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

s/ Curt Hesse

Curt Hesse

**CERTIFICATE OF SERVICE**

As required by Fed. R. App. P. 25(b) and 5th Cir. R. 25.2.5, I certify that I served a copy of this document on all parties or their counsel of record—who are listed below—in accordance with Fed. R. App. P. 25(c) on the date indicated as follows:

Mr. Levon Hovnatanian
hovnatanian@mdjwlaw.com
MARTIN, DISIERE, JEFFERSON & WISDOM, LLP
808 Travis Street, Suite 1100
Houston, Texas 77002
Facsimile: (713) 222-0101
*Counsel for Appellee Alpine Site Services, Incorporated*

☐ personal delivery
☐ mail
☐ third-party commercial carrier
☐ electronic means
☒ CM/ECF system

Date:     August 22, 2024                    s/ Curt Hesse
                                                           Curt Hesse

**CERTIFICATE OF COMPLIANCE**

As required by Fed. R. App. P. 28(a)(10), 32(g)(1) and 5th Cir. R. 32.3, I certify that this document complies with the:

1. type-volume limit of Fed. R. App. P. 35(b)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

   ☒ this document contains three thousand three hundred thirty-seven (3,337) words, or

   ☐ this brief uses a monospaced typeface and contains [*state the number of*] [(#,###)] lines of text.

2. typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   ☒ this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 12-point Century Old Style Standard font (10-point Century Old Style Standard font for footnotes in accordance with 5th Cir. R. 32.1), or

   ☐ this brief has been prepared in a monospaced typeface using Microsoft Word 365 with [*state the number of*] [##] characters per inch in [*name of type style*] font.

s/ Curt Hesse
_____
Curt Hesse

**APPENDIX**

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 8, 2024

Lyle W. Cayce
Clerk

No. 23-20290

---

BEAU KELLEY; ALVIN PEREZ LOPEZ; ANTHONY MARTIN; AUSTIN BRASWELL; CARLOS PEREZ, ET AL.

*Plaintiffs—Appellants,*

*versus*

ALPINE SITE SERVICES, INCORPORATED,

*Defendant—Appellee.*

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-1152

---

Before SOUTHWICK, HAYNES, and GRAVES, *Circuit Judges.*

LESLIE H. SOUTHWICK, *Circuit Judge*:

The Plaintiffs sued their former employer Alpine Site Services, Inc. for violating the Fair Labor Standards Act ("FLSA") by not paying them the required overtime pay. Alpine argued no such pay was owed because the Motor Carrier Act ("MCA") exemption applied. The district court agreed and dismissed the suit with prejudice. We AFFIRM.

The FLSA mandates that no employer shall require its employees to work more than 40 "hours unless such employee receives compensation for his employment in excess of [40] hours . . . at a rate not less than [1.5] times

the regular rate" he is paid. 29 U.S.C. § 207(a)(1). This "overtime-pay rule is subject to several enumerated exemptions." *Cunningham v. Circle 8 Crane Servs., L.L.C.*, 64 F.4th 597, 600 (5th Cir. 2023) (citation omitted). One such exemption is the MCA exemption, which excuses common and private motor carriers from their obligation to pay overtime to any employee over "whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to" 49 U.S.C. § 31502. 29 U.S.C. § 213(b)(1); 49 U.S.C. § 31502(b)(1)–(2); *see* 29 C.F.R. § 782.2.

The MCA exemption applies only to employees who "(1) [a]re employed by carriers whose transportation of passengers or property by motor vehicle is subject to" the Secretary of Transportation's jurisdiction "and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the [MCA]." 29 C.F.R. § 782.2(a). Four classes of employees are typically covered by the MCA exemption if their work directly affects the safety of motor vehicles in interstate commerce: drivers, driver's helpers, loaders, and mechanics. § 782.2(b)(1)–(2).

The Plaintiffs' first issue is that the district court erroneously classified them as "loaders" and therefore applied the MCA exemption. To determine whether an employee falls into one of the covered employee categories, "neither the name given to his position nor that given to the work that he does is controlling"; it is the character of his job duties and activities. § 782.2(b)(2). For purposes of the MCA exemption, a loader is an employee "whose duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country." § 782.5(a). These duties "directly affect[] 'safety of operation' so long as [the employee] has responsibility when such motor vehicles are being loaded, for exercising judgment and discretion in planning

and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner" that the vehicles' safety is not jeopardized. *Id.*

Numerous witnesses, including several Plaintiffs, testified at trial that Alpine employees use their own judgment in loading vehicles; Alpine employees regularly load vehicles; there is not always supervision and direction as to loading; crew members like the Plaintiffs make independent loading decisions; and every crew member is trained how to load trailers safely and will be called on to do so as needed. The district court credited this testimony and found that Alpine employees "load and secure" equipment; the Plaintiffs "did in fact load" such equipment; and the "Plaintiffs shared in the exercise of discretion regarding loading the trailers and their loading duties had a significant effect on the safety of [Alpine's] vehicles." The Plaintiffs presented no contradictory evidence to challenge these findings. Without such evidence, they failed to establish clear error or how the district court's factual findings were inconsistent with the evidence. *See Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015).

Further, it is not required that a loader's sole job responsibility be to load and unload freight. Even full-duty loaders "may engage in some activities which do not affect safety of operation" and are not recognized as activities within the statutory definition of loading. *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 670 (1947); *see* 29 C.F.R. § 782.5(a). All that is required is for employees "to devote . . . a 'substantial part' of [their] time to activities directly affecting safety of operation." *Levinson*, 330 U.S. at 681. If loading is no more than a "trivial, casual or occasional . . . part of an employee's activities," the employee cannot be classified as a loader. *Wirtz v. Tyler Pipe & Foundry Co.*, 369 F.2d 927, 930 (5th Cir. 1966) (quoting *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 708 (1947)). Here, trial testimony established that one of a crew member's regular duties is to load trailers on a

weekly basis and that the Plaintiffs were regularly called upon to load. The Plaintiffs testified they were required to load at least one to three times per week and loading could amount to 40 percent of their job responsibilities.

There is no specific, minimum frequency with which an employee must engage in work to which the MCA exemption would apply. We agree with another panel's assessment that "we do not require a particularly high concentration of qualifying work." *Amaya v. NOYPI Movers, L.L.C.*, 741 F. App'x 203, 206 (5th Cir. 2018). Because the work is evaluated on a class-wide basis, we also agree that the MCA exemption can apply "to employees who rarely, or never engage in" safety-affecting activities. *Id.* (citation omitted). We conclude that, when loading at times amounts to 40 percent of the work and employees are required to load at least one to three times per week, the MCA exemption applies. Indeed, one of our precedents found the MCA exemption applied when the degree of relevant work was comparable to this case. *See Songer v. Dillon Res., Inc.*, 618 F.3d 467, 475–76 (5th Cir. 2010).[1]

The Plaintiffs also argue the MCA exemption must be determined on a week-by-week basis. Under this exemption, "if the bona fide duties of the job performed by the employee" subject the employee to be or to likely be "called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities . . . he comes within the exemption in all workweeks when he is employed at such job." 29 C.F.R. § 782.2(b)(3). This "rule applies regardless of the proportion of the

---

[1] The Supreme Court recently abrogated *Songer* and other related precedents. *See Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018). We agree, however, with another panel that "the central analyses of these [abrogated] decisions remain unaffected because they concern the interpretation and application of FLSA-implementing regulations, not the statute itself." *Amaya*, 741 F. App'x at 205 n.2 (referencing *Encino Motorcars*, 584 U.S. at 89).

employee's time or of his activities which is actually devoted to such safety-affecting work . . . and the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting 'safety of operation.'" *Id.*

The MCA exemption thus applies in all work weeks, even those in which the employee performs only non-safety-affecting duties, so long as an employee's continuing duties are safety-affecting. *Songer*, 618 F.3d at 475. It was therefore not error for the district court to conclude Alpine was not required to prove the MCA exemption applied to the Plaintiffs' employment on a week-by-week basis.

Because the Plaintiffs were regularly called upon in the ordinary course of their work to perform, and did perform, safety-affecting work, they qualified under the MCA exemption in all workweeks they were employed with Alpine. It was thus not clearly erroneous for the district court to find on this record that the "Plaintiffs, as part of their job duties, were expected to and did in fact load" materials onto Alpine trailers, and "[t]hese job duties were not so trivial . . . as to not affect the safety of Alpine's operations." *See Guzman*, 808 F.3d at 1036.

The Plaintiffs' second claim of error is that the district court abused its discretion when it denied the Plaintiffs' motion to amend the court's factual findings. *See* Fed. R. Civ. P. 52(b). The argument is made in one sentence on the last page of their brief. In summary, which is not much shorter than its entirety, the Plaintiffs argue it was error to deny the motion "to add or amend findings of fact regarding the duties and responsibilities" of the Plaintiffs.

Appellants are required to present an argument and citations to supporting authority for each contention in their brief. Fed. R. App. P. 28(a)(8)(A). They must provide meaningful analyses for each issue and

present more than conclusory allusions as to their arguments for the issues to be properly raised on appeal. *United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010); *see also Ard v. Rushing*, 597 F. App'x 213, 221 n.7 (5th Cir. 2014). That did not occur here. We therefore do not consider this argument.

AFFIRMED.