## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

BEAU KELLEY; ALVIN PEREZ LOPEZ; ANTHONY MARTIN; AUSTIN
BRASWELL; CARLOS PEREZ, ET AL,

*Plaintiffs-Appellants*

*v.*

ALPINE SITE SERVICES, INCORPORATED,

*Defendant-Appellee*

On Appeal from Cause No. 4:19-CV-1152
In the United States District Court for the Southern District of Texas
Houston Division

## APPELLEE'S RESPONSE
## TO APPELLANTS' PETITION FOR REHEARING EN BANC

Levon G. Hovnatanian
Texas Bar No. 10059825
*hovnatanian@mdjwlaw.com*
Kathleen A. Whaley
Texas Bar No. 24126259
*whaley@mdjwlaw.com*
MARTIN, DISIERE, JEFFERSON
& WISDOM, LLP
808 Travis Street, Suite 1100
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101

Steven W. Watkins
Colorado Bar No. 51397
*steve@goldenlawyers.com*
BRADLEY DEVITT HASS
& WATKINS, PC
2201 Ford Street
Golden, Colorado 80401
Telephone: (303) 384-9228
Facsimile: (303) 384-9231

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

BEAU KELLEY; ALVIN PEREZ LOPEZ; ANTHONY MARTIN; AUSTIN
BRASWELL; CARLOS PEREZ, ET AL,

*Plaintiffs-Appellants*

*v.*

ALPINE SITE SERVICES, INCORPORATED,

*Defendant-Appellee*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons
and entities as described in the fourth sentence of Rule 28.2.1 have an interest in
the outcome of this case. These representations are made in order that the Judges
of this Court may evaluate possible disqualification or recusal.

| | |
|---|---|
| **Plaintiffs-Appellants** | Beau Kelley |
| | Alvin Lopez |
| | Anthony Martin |
| | Austin Braswell |
| | Carlos Perez |
| | Daniel Scherr |
| | Leo Butler, Jr. |
| | Rex Luman |
| | John Szatko |
| | Leonardo Hernandez, Jr. |
| | Michael Russell |

Angelo Molina
Anthony Vronko, III
Thomas Hamby
David Jackson
Sean Pohl
Brady Paholek
Abdal Chavez
Christopher Singletary
James Price
Colin Locklier
Justin Edwards
Brandon Holzbach
Ashton McCasland
Ismael Andrade
Rosbel Overa
Arnoldo Rodriguez
Enrique Rodriguez
Daniel Rodriguez
Tommy Barnes

Appellate Counsel

Curt Hesse
Texas Bar No. 24065414
*curt@mooreandassociates.net*
Melissa Moore
Texas Bar No. 24013189
*melissa@mooreandassociates.net*
MOORE & ASSOCIATES
440 Louisiana Street, Suite 1110
Houston, Texas 77002-1055
Telephone: (713) 222-6775
Facsimile: (713) 222-6739

| Trial Counsel | Curt Hesse |
| | Melissa Moore |
| | |
| | Auriana Chantel Siplin |
| | Texas Bar No. 24128840 |
| | Bridget Dale Davidson |
| | Texas Bar No. 24096858 |
| | MOORE & ASSOCIATES |
| | 440 Louisiana Street, Suite 1110 |
| | Houston, Texas 77002-1055 |
| | Telephone: (713) 222-6775 |
| | Facsimile: (713) 222-6739 |

**Defendant-Appellee**      **Alpine Site Services, Incorporated**

Appellate Counsel

Levon G. Hovnatanian
Texas Bar No. 10059825
*hovnatanian@mdjwlaw.com*
Kathleen A. Whaley
Texas Bar No. 24126259
*whaley@mdjwlaw.com*
MARTIN, DISIERE, JEFFERSON & WISDOM, LLP
808 Travis Street, Suite 1100
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101

Steven W. Watkins
Colorado Bar No. 51397
*steve@goldenlawyers.com*
BRADLEY DEVITT HASS & WATKINS, PC
2201 Ford Street
Golden, Colorado 80401
Telephone: (303) 384-9228
Facsimile: (303) 384-9231

Trial Counsel                              Steven W. Watkins

David B. Jordan
Texas Bar No. 24032603
*djordan@littler.com*
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:  (713) 951-9400
Facsimile:   (713) 951-9212

Claire B. Deason
Texas Bar No. 24087399
*cdeason@littler.com*
LITTLER MENDELSON, P.C.
80 South 8th Street
1300 IDS Center
Minneapolis, Minnesota 55402
Telephone:  (612) 313-7610
Facsimile:   (763) 647-7964

Nicole S. LeFave
Texas Bar No. 24085432
*nlefave@littler.com*
LITTLER MENDELSON, P.C.
100 Congress Avenue, Suite 1400
Austin, Texas 78701
Telephone:  (512) 982-7250
Facsimile:   (512) 982-7248

*/s/ Levon G. Hovnatanian*
Levon G. Hovnatanian
**Attorney of Record for Appellee**
**Alpine Site Services, Incorporated**

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .......................................................i

TABLE OF CONTENTS..........................................................................v

TABLE OF AUTHORITIES ...................................................................vi

I.     IN HIS *ESCOBEDO* CONCURRENCE, JUDGE OLDHAM
       ADDRESSED THE LAW ON WHETHER TRANSPORTATION
       OCCURS IN INTERSTATE COMMERCE; HERE, THE
       APPELLANTS *STIPULATED* THE TRANSPORTATION
       OCCURRED IN INTERSTATE COMMERCE. ...........................................1

II.    THE PETITION'S "STATEMENT OF THE ISSUE" CONTAINS
       *FIVE* SIGNIFICANT ERRORS. ....................................................2

III.   THE PETITION'S STATEMENT OF "FACTS" IS SIMILARLY
       DUBIOUS..............................................................................6

       A.     "Very Little Time"?.....................................................6

       B.     Training .................................................................6

       C.     Construction *And* Transportation .............................7

       D.     Records .................................................................7

IV.    NONE OF THE PETITION'S LEGAL ARGUMENTS ARE
       MERITOIOUS OR IMPLICATE THE LOFTY EN BANC REVIEW
       STANDARD...........................................................................9

       A.     "Only 'Full-Duty' Loaders"? .......................................9

       B.     Semantics................................................................11

       C.     What The Panel Actually Held.....................................13

       D.     The Workweek Standard  ...........................................16

V.     CONCLUSION........................................................................17

CERTIFICATE OF SERVICE ...............................................................19

CERTIFICATE OF COMPLIANCE.........................................................19

# TABLE OF AUTHORITIES

**Cases**

*Amaya v. Noypi Movers, L.L.C.*,
   741 F.App'x 203 (5th Cir. 2018) ............................................................ 9, 12, 15

*Escobedo v. Ace Gathering, Inc.*,
   109 F.4th 831, 2024 U.S. App. LEXIS 19025 (5th Cir. July 31, 2024) ...............1

*Kelley v. Alpine Site Servs., Inc.*,
   2024 U.S. App. LEXIS 19967 (5th Cir. Aug. 8, 2024) ............................... 14, 16

*Levinson v. Spector Motor Serv.*,
   330 U.S. 649 (1947) ............................................................... 3, 10, 11, 12

*Morris v. McComb*,
   332 U.S. 422 (1947) .........................................................................13

*Olibas v. Barclay*,
   838 F.3d 442 (5th Cir. 2016) ....................................................... 8, 9, 15

*Pyramid Motor Freight Corp. v. Ispass*,
   330 U.S. 695 (1947) ............................................................. 3, 10, 11

*Resch v. Krapf's Coaches, Inc.*,
   785 F.3d 869 (3d Cir. 2015) .............................................................13

**Statutes**

29 C.F.R. § 782.2(b)(3) ....................................................................... 16, 17

49 U.S.C. § 13101 ...............................................................................7

TO THE HONORABLE FIFTH CIRCUIT:

The petition for rehearing en banc is a house of cards. There is nothing en banc-worthy, or even irregular, here. Alpine substantiates these points below.

**I.  IN HIS *ESCOBEDO* CONCURRENCE, JUDGE OLDHAM ADDRESSED THE LAW ON WHETHER TRANSPORTATION OCCURS IN INTERSTATE COMMERCE; HERE, THE APPELLANTS *STIPULATED* THE TRANSPORTATION OCCURRED IN INTERSTATE COMMERCE.**

The petition begins and ends with Judge Oldham's concurrence in *Escobedo v. Ace Gathering, Inc.*, 109 F.4th 831, 2024 U.S. App. LEXIS 19025 (5th Cir. July 31, 2024). The appellants say he addressed "this Court's jurisprudence on the exemption from the overtime requirements of the Fair Labor Standards Act[.]" The topic of his concurrence was actually much more narrow.

The *Escobedo* majority stated, "In this certified interlocutory appeal concerning unpaid overtime wages, we must decide whether tanker-truck drivers who transport crude oil *solely within the State of Texas* are *transporting property in 'interstate or foreign commerce'* under the Motor Carrier Act of 1980." 2024 U.S. App. LEXIS 19025, at *1 (emphasis added). "Because most of the crude oil being transported is ultimately bound for destinations outside the state," the majority concluded that "our precedent requires that we answer yes." *Id.*

Judge Oldham found the law on specifically *whether transportation occurs in interstate commerce* to be confounding. 2024 U.S. App. LEXIS 19025, at *12,

*13, *15 (Oldham, J., concurring). It is doubtful he would have issued a separate opinion here, because in their Admissions of Fact, the appellants "**stipulate[d]**" that "[o]nce manufactured, the screwpiles . . . are loaded on to 45-foot flat-deck trailers **and transported by Defendant to Defendant's jobsites across the country across state lines**." ROA.3000-3001 (emphasis added). While in *Escobedo* the transportation was "solely within the State of Texas," no one would dispute that a manufacturer/seller transporting material across state lines for installation at the buyer's facility qualifies as "interstate commerce."

In sum: The issue Judge Oldham addressed in his *Escobedo* concurrence is no issue at all here.

## II. THE PETITION'S "STATEMENT OF THE ISSUE" CONTAINS *FIVE* SIGNIFICANT ERRORS.

The appellants say "the following issue" deserves en banc consideration:

> whether the motor carrier exemption to the FLSA, which applies to transportation workers employed as "full-duty" loaders of common carriers and whose job duties directly affected the operational safety of commercial motor vehicles travelling on public highways in interstate commerce, also applies to construction workers (for example, welders and general laborers) working on construction sites and employed by a construction company also registered as a private motor carrier who occasionally or sporadically loaded scrap or waste on flatbed trailers that may or may not travel in interstate commerce.

From that "issue," this case is barely recognizable.

2

Taking the errors in chronological order, **first**, the FLSA applies to more loaders than just those "employed as 'full-duty' loaders." Supreme Court authority demonstrates that an employee who loads need not be a full-time loader to fall within the MCA exemption:

> The District Court, in applying § 204 of the Motor Carrier Act to respondents, will determine whether or not the activities of each respondent, **either as a whole or in substantial part**, come within the Commission's definition of the work of a "loader." In determining whether the activities, **or any substantial part of the activities**, of an individual come within those of such a "loader," the District Court **shall not be concluded by the name which may have been given to his position or to the work that he does, nor shall the District Court be required to find that any specific part of his time in any given week must have been spent in those activities**.

*Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 707 (1947) (emphasis added); *accord id*. at 708; *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 678-79 (1947).

**Second**, to say the appellants are just "construction workers (for example, welders and general laborers)" is a vital error of omission. All of Alpine's construction teams—including the welders, the general laborers, and even the operators—are trained specifically *as loaders*. ROA.3898; ROA.3898-3899; ROA.3959-3960; ROA.3960; *see* ROA.3571. And after Alpine's construction team members are trained in loading, *they all load*. ROA.3899; ROA.4292; ROA.4581. *Everyone on site* is responsible for loading Alpine's trailers. ROA.3859; ROA.3870; ROA.4316; ROA.4522; ROA.4713; *see* ROA.3960-3961;

ROA.4402; ROA.4478; ROA.4482; ROA.4495; ROA.4496; ROA.4553; ROA.4558; ROA.4579; ROA.4726-4727; ROA.4733; ROA.4734; ROA.4735; ROA.4737; ROA.4739; ROA.4755; ROA.4755-4756.

**Third**, those employees do not just "occasionally or sporadically" load. One Alpine witness testified that loading is part of the construction crew's "regular duties" and "ordinary duties." ROA.4292-4293. Another Alpine witness testified that "on a typical jobsite," the crew loads scrap onto trailers "weekly." ROA.4494-4496.

Even the appellants' testimony debunks the petition's "occasionally or sporadically" characterization. Kelley variously testified he loaded cutoff about once a week (ROA.3983); he loaded trailers in the field probably at least once a week (ROA.4014); at one yard, he loaded two or three days a week (ROA.4014); he loaded plates and piles and equipment on a semi-trailer as needed approximately one to two times a week (ROA.4026); and he would load trailers at the yard two to three times a week (ROA.4156). Singeltary testified that at one jobsite, he loaded trailers once a week (ROA.4185-4186), and he assisted in loading screwpiles, pipes, and plates onto semi-trailers approximately two to three times a week (ROA.4223-4224). Chavez testified he loaded equipment, such as Bobcats and pipes, onto trailers approximately two times a week or as needed. ROA.4383. Trupp testified he would load screwpiles onto trailers usually once or

twice a week.  ROA.4400.  Price testified he loaded trailers approximately one to two times a week (ROA.4589-4590); he loaded screwpiles onto trailers in one yard about two to three times a week (ROA.4600); and when he was out at a jobsite, he helped load screwpiles onto trailers about once or twice a week (ROA.4600). Perez testified he loaded screwpiles onto flatbed trailers approximately once a week (ROA.4624) and he loaded trailers on the jobsites about once a week (ROA.4627).  Russell testified that, at one jobsite, he loaded scrap and piles on a flatbed trailer approximately two times a week, and he loaded one to two times a week.  ROA.4828-4829.  Russell also testified he spends 40 percent of his time loading scrap.  ROA.4841-4842.  Much more such evidence may be found at ROA.6009-6010.

**Fourth**, as shown in the preceding paragraph, the appellants did not load just "scrap or waste."  Screwpiles, plates, pipes, *Bobcats*, and other equipment are obviously not "scrap or waste."

**Fifth**, there is no "may or may not" about whether Alpine's trailers traveled in interstate commerce.  Again, the appellants "stipulate[d]" that "[o]nce manufactured, the screwpiles . . . are loaded on to 45-foot flat-deck trailers *and transported by Defendant to Defendant's jobsites across the country across state lines*."  ROA.3000-3001 (emphasis added).  Even ignoring the stipulation, abundant evidence shows Alpine's transportation was via trucks, <u>from state to</u>

state.  ROA.3831-3832;  ROA.3870;  ROA.3926;  ROA.3927;  ROA.3928-3930; ROA.3931-3932; ROA.4187-4188; ROA.4480; *see* ROA.3845.

The fact is, the "issue" the appellants say merits en banc consideration is not raised by this record—far from it.

## III.  THE PETITION'S STATEMENT OF "FACTS" IS SIMILARLY DUBIOUS.

The appellants' Statement of Facts mischaracterizes what the appellants do and what Alpine does.

### A.  "Very Little Time"?

To begin with, the appellants did not "spen[d] . . . very little time loading anything." *One to three times a week* is not "very little time." *Forty percent* is not "very little time."  Again, loading is part of the crew's "regular duties" and "ordinary duties."  ROA.4292-4293.

### B.  Training

The appellants say they "did not receive any formal training (or received very little training) on compliance with Department of Transportation regulations or load securement."  Alpine definitely provided training in load securement, both in person and online.  ROA.3958.  No authority requires Alpine to train its employees in specifically "Department of Transportation regulations."

## C. Construction *And* Transportation

The appellants say "Alpine is a construction—not transportation—company[.]" Alpine is both. Alpine's founder and secretary-treasurer testified that, after Alpine manufactures the screwpiles in either Commerce City, Colorado, or Edna, Texas (ROA.3831; *see* ROA.3892; ROA.3893), *it transports them using its own "large fleet of trucks . . . trucks and trailers"* (ROA.3832). Alpine transports cutoff the same way. ROA.4320-4321.

Furthermore, the MCA exemption does not require Alpine to be a "transportation company." Instead, it requires interstate "transportation." 49 U.S.C. § 13101. As shown above, the appellants stipulated that Alpine "*transport[s]*" the screwpiles "to Defendant's jobsites *across the country across state lines*." ROA.3000-3001. Alpine engaged in the interstate transportation of screwpiles and related material.

## D. Records

The appellants say "Alpine admitted that there were no records to show which of its employees loaded which of its trailers or where they were going, whether interstate or intrastate." But the appellants' stipulation that Alpine "transport[s]" the screwpiles "to Defendant's jobsites across the country across

state lines" (ROA.3000-3001) accounts for loads going from either Colorado or Texas to some other state.[1]

Alpine's office manager testified loads also "go to Commerce City and Edna, Texas." ROA.3975. In other words, Alpine does not just leave its trailers, equipment, and cutoff in the state in which it just finished a job; it transports them back to Colorado or Texas. ROA.3930; ROA.4019. That accounts for the loads going from other states back to either Colorado or Texas.

In short, there is no question that Alpine transported loads interstate.

Furthermore, there is no rule that an employer must keep records stating *which particular employees* loaded *which particular loads* (or conversely, that testimony of such loading is somehow insufficient). The appellants cite *Olibas v. Barclay*, 838 F.3d 442 (5th Cir. 2016), but in that case the Court wrote that even though Native lacked supportive records, the jury *still* "could have decided in favor of Native"; the lack of such records was merely *one reason* the jury was justified in finding for the drivers. *Id.* at 449. In other words, "the evidence . . . support[ed] the jury's finding that the MCA exemption did not apply . . . *particularly because* Native did not keep records or otherwise provide irrefutable evidence to challenge its drivers' testimony" (*Id.*) (emphasis added); "[t]he jury's verdict on liability is . .

---

[1] The states to which Alpine transports loads include Oklahoma, Louisiana, Ohio, Pennsylvania, New York, Montana, North Dakota, South Dakota, New Jersey, New Mexico, Wyoming, Georgia, and Utah. ROA.3831; ROA.3845; ROA.3928-3930; ROA.3977-3978; *see* ROA.3907; ROA.3926; ROA.3952; ROA.3977.

. supported by the evidence *especially because* Native failed to produce irrefutable documentary evidence contradicting the drivers' testimony" (*Id.* at 451) (emphasis added). The employee did not prevail *just because* Native lacked records.

The appellants also cite the statement in *Amaya v. Noypi Movers, L.L.C.*, 741 F.App'x 203, 206 (5th Cir. 2018) (per curiam), that "the record lacks a sufficient evidentiary basis to tie the loading work done by Panel Techs [the plaintiffs] specifically to interstate commerce." Again, the appellants stipulated that Alpine "transport[s]" the screwpiles "to Defendant's jobsites across the country across state lines." ROA.3000-3001. So who loaded the trailers that did the transporting? *Everyone on the construction crew* (ROA.3899; ROA.4292-4293; ROA.4494-4496; ROA.4581), including *the appellants* (ROA.3983; ROA.4014; ROA.4026; ROA.4156; ROA.4185-4186; ROA.4223-4224; ROA.4383; ROA.4400; ROA.4589-4590; ROA.4600; ROA.4624; ROA.4627; ROA.4828-4829; ROA.4841-4842; ROA.6009-6010). The appellants' loading work was absolutely tied to interstate commerce.

## IV. NONE OF THE PETITION'S LEGAL ARGUMENTS ARE MERITOIOUS OR IMPLICATE THE LOFTY EN BANC REVIEW STANDARD.

### A. "Only 'Full-Duty' Loaders"?

The appellants say "the Supreme Court expressly adopted the ICC's determination vis-à-vis its jurisdiction, under the Motor Carrier Act, *to regulate*

*only 'full-duty' loaders*." (Emphasis added.)  For that assertion, they cite *Levinson*.

Yet *Levinson* states:

> [T]he issue is whether the Commission has the power to establish qualifications and maximum hours of service with respect to **partial-duty loaders** . . . The fact that the Commission has found it necessary to establish qualifications and maximum hours of service which cover not only drivers, but also partial-duty drivers, is an indication that, in the opinion of the Commission, its power, under the Motor Carrier Act, extends to **partial-duty** as well as to full-duty employees engaged in activities affecting the safety of operation of interstate motor carriers.

330 U.S. at 678-79 (emphasis added).

Similarly, *Ispass* states:

> [I]f the whole **or a substantial part** of such alleged 'loading' activities of the respective respondents, during the periods at issue, does come within the kind of activities which, according to the Commission, affect such safety of operation, then those respondents who were engaged in such activities are excluded from the benefits of such § 7 [of the FLSA].

330 U.S. at 708 (emphasis added).

And again:

> The District Court, in applying § 204 of the Motor Carrier Act to respondents, will determine whether or not the activities of each respondent, either as a whole **or in substantial part**, come within the Commission's definition of the work of a "loader."  In determining whether the activities, or any **substantial part** of the activities, of an individual come within those of such a "loader," the District Court shall not be concluded by the name which may have been given to his position or to the work that he does[.]

*Id*. at 707 (emphasis added).

The appellants crave an opinion which says only employees who load and do nothing else fall under the MCA exemption. There isn't one, and as shown above, the Supreme Court has firmly rejected that proposition.

**B.    Semantics**

The appellants say the "panel's decision that this Court does 'not require a particularly high concentration of exemption-qualifying work' for the motor carrier exemption to apply directly conflicts with" the "substantial part" standard. There is no merit to this entirely semantic assertion.

The Supreme Court has refused to assign a percentage to the phrase, "substantial part." *See Ispass*, 330 U.S. at 707 ("[N]or shall the District Court be required to find that any specific part of his time in any given week must have been spent in those activities."); *Levinson*, 330 U.S. at 681 (no need for proof of "what fraction of his time was spent" loading). In fact, the Court concluded that to do so would be inappropriate:

> While the indefiniteness of the terms "large" or "substantial" is obvious, nevertheless, those are the words which the Commission has chosen to use in dealing with this subject. . . . The fundamental test is simply that the employee's activities affect safety of operation. . . . The verb "affect" is itself incapable of exact measurement. . . . In issuing its regulations, the Commission itself can supply whatever definiteness the occasion shall require. From the point of view of the safety program under the Motor Carrier Act, there is no need for a sharply drawn limit to the power of the Commission to make regulations with respect to employees whose activities affect the safety of operation of motor vehicles in interstate or foreign commerce.

*Id.* at 670-71; *accord id.* at 673 ("[T]he Commission has not exercised [its] power affirmatively by establishing qualifications and maximum hours of service with respect to loaders."); *Amaya*, 741 F.App'x at 206 ("[C]onsistent with regulatory guidance, we have never set a specific quantification of how frequently employees must engage in the sort of work that would qualify for the MCA exemption.").

But the Supreme Court also recognized that a "substantial part" can be less than half:

> [E]ven a full-duty loader may engage in some activities which do not affect safety of operation. Such "non-safety" activities may make up another "large part" of the loader's total activities. They may constitute an even larger part of his activities than his safety-affecting activities.

*Levinson*, 330 U.S. at 670.

And again:

> [M]ore than half of the time or activities of a full-duty "loader" may be consumed in activities not directly affecting the safety of operation of motor vehicles . . . From the point of view of the Commission and its jurisdiction over safety of operation, this indicates that it is not a question of fundamental concern whether or not it is the larger or the smaller fraction of the employee's time or activities that is devoted to safety work. . . . This line of reasoning . . . results in keeping within the jurisdiction of the Commission's safety program partial-duty loaders, as well as full-duty loaders . . . regardless of whether or not in any particular week they may have devoted more hours and days to activities not affecting safety of operation than they may have devoted to those affecting such safety of operation.

*Id.* at 674-75.

So does this Court "not requir[ing] a particularly high concentration of qualifying work" offend the Supreme Court's rule that only a "substantial part," which may be less than half, is required? Certainly not. Indeed, the first time this Court observed that "when evaluating the nature of work from a class-wide perspective, we do not require a particularly high concentration of qualifying work in order to meet the MCA exception" (in *Amaya*), it cited *Morris v. McComb*, 332 U.S. 422, 433-34 (1947), in which the Supreme Court held the MCA exception applied *even though the employee/driver spent less than four percent of his time driving in interstate commerce*:

> Each driver appears to have been a full-time driver during each week that he worked. The tables show 464 "Pickup Trips" and 260 "Boat Dock Trips," or a total of 724 made in interstate commerce, when and as required by petitioner's consignors. *These constituted 3.65% of the petitioner's total trips*.

*Id*. at 433 (emphasis added); *see Resch v. Krapf's Coaches, Inc.*, 785 F.3d 869, 870, 874 (3d Cir. 2015) (MCA exemption applied where "undisputed evidence establishes that . . . 6.9% of all trips drivers took were interstate").

Again—this is semantics. There is nothing wrong with this Court's choice of words.

## C.     What The Panel Actually Held

The appellants say, "The panel erred by applying the motor carrier exemption's relaxed common carrier test to determine whether the exemption

13

applied, even though Alpine was a private (as opposed to common) carrier." According to the appellants, "To qualify for the exemption, private carriers must show that their employees were actually and regularly called upon to perform safety-affecting activities." But they assert, "For the panel . . . it was enough that an Alpine employee could be 'called upon in the ordinary course of his work to [load]' . . . the panel expressly held that the could-be-called-upon standard for common carriers applied."

The appellants have mischaracterized the opinion. The panel variously wrote:

> Here, trial testimony established that *one of a crew member's regular duties is to load trailers on a weekly basis* and that *the Plaintiffs were regularly called upon to load*. . . .
>
>         . . .
>
> We conclude that, *when loading at times amounts to 40 percent of the work and employees are required to load at least one to three times per week*, the MCA exemption applies.
>
>         . . .
>
>     Because the Plaintiffs were *regularly called upon in the ordinary course of their work to perform, and did perform, safety-affecting work*, they qualified under the MCA exemption . . . It was thus not clearly erroneous for the district court to find on this record that the "Plaintiffs, as part of their job duties, *were expected to and did in fact load*" materials onto Alpine trailers, and "[t]hese job duties were not so trivial . . . as to not affect the safety of Alpine's operations."

2024 U.S. App. LEXIS 19967, at *4-5, *5, *6-7 (emphasis added).

So the panel held the MCA exemption applied because the appellants were regularly called upon to load and did in fact regularly load. Thus, *under the appellants' own argument*, the panel applied the correct standard.

The appellants also say *Olibas* and *Amaya* conflict on this issue. As the appellants point out, in *Amaya*, some of the trucks "plainly traveled interstate," but here the appellants ignore that the *Amaya* record "lacks a sufficient evidentiary basis to tie the loading work done by Panel Techs [the plaintiffs] specifically to interstate commerce." 741 F.App'x at 206. In reversing the defendants' summary judgment, the Court did not analyze whether the carrier was a private or common carrier where the defendant's summary-judgment evidence fell short on whether the plaintiffs were even statutory "loaders" in the first place.

In *Olibas*, "there was no dispute that Native was a motor carrier engaged in interstate commerce . . . There was, however, conflicting testimony over whether the drivers engaged in the actual transportation of goods across state lines[.]" 838 F.3d at 445-46. Because the "jury's verdict on liability is amply supported by the evidence," the Court affirmed the judgment for the plaintiff. *Id*. at 451. The Court did not analyze whether the carrier was a private or common carrier where the jury's finding that "Native failed to establish *each essential element* of the MCA exemption" (*Id*. at 447) (emphasis added) was supported by the evidence.

### D. The Workweek Standard

The appellants say the panel erred by concluding "the application of the motor carrier exemption did not need to be determined on a workweek basis." The panel indeed held that, "Because the Plaintiffs were regularly called upon in the ordinary course of their work to perform, and did perform, safety-affecting work, they qualified under the MCA exemption in all workweeks they were employed with Alpine." 2024 U.S. App. LEXIS 19967, at *6.

"As a general rule, if the bona fide duties of the job performed by the employee are in fact such that he is . . . called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities of the character described in paragraph (b)(2) of this section, he comes within the exemption in all workweeks when he is employed at such job." 29 C.F.R. § 782.2(b)(3).[2] As shown above, the appellants were called upon in the ordinary course of their work to perform, and did regularly perform, safety-affecting activities of the character described in paragraph (b)(2).[3] As such, the appellants

---

[2] In relevant part, paragraph (b)(2) states the exemption applies to employees who work wholly or in part as loaders directly affecting the safety of the operation of motor vehicles on the public highways in transportation in interstate commerce.

[3] ROA.3983; ROA.4014; ROA.4026; ROA.4153-4154; ROA.4155; ROA.4156; ROA.4185-4186; ROA.4223-4224; ROA.4293; ROA.4383; ROA.4400; ROA.4589-4590; ROA.4600; ROA.4624; ROA.4627; ROA.4815-4816; ROA.4828-4829; ROA.4841-4842; ROA.6009-6010.

"come[] within the exemption in all workweeks when [they were] employed at such job."

The "general rule assumes that the activities involved in the continuing duties of the job in all such workweeks will include activities which have been determined to affect directly the safety of operation of motor vehicles on the public highways in transportation in interstate commerce." 29 C.F.R. § 782.2(b)(3). As also shown above, that is the case here.[4] "Where this is the case, the rule applies regardless of the proportion of the employee's time or of his activities which is actually devoted to such safety-affecting work in the particular workweek, and the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting 'safety of operation.'" *Id*.

Considering the above, the panel was right. Alpine was not required to establish that the MCA exemption applied on a workweek basis.

## V. CONCLUSION

Alpine respectfully asks the Court to deny the petition.

---

[4]     ROA.3859-3861;    ROA.3869;    ROA.4007-4009;    ROA.4031-4032;    ROA.4193; ROA.4320-4321; ROA.4381; ROA.4406-4407; ROA.4516; ROA.4517; ROA.4575; ROA.4756; ROA.4835.

Respectfully submitted,


By:*/s/ Levon G. Hovnatanian*
Levon G. Hovnatanian
Texas Bar No. 10059825
*hovnatanian@mdjwlaw.com*
Kathleen A. Whaley
Texas Bar No. 24126259
*whaley@mdjwlaw.com*
MARTIN, DISIERE, JEFFERSON & WISDOM, LLP
808 Travis Street, Suite 1100
Houston, Texas 77002
Telephone:  (713) 632-1700
Facsimile:  (713) 222-0101

Steven W. Watkins
Colorado Bar No. 51397
*steve@goldenlawyers.com*
BRADLEY DEVITT HASS & WATKINS, PC
2201 Ford Street
Golden, Colorado 80401
Telephone:  (303) 384-9228
Facsimile:  (303) 384-9231

***Counsel for Appellee Alpine Site Services,
Incorporated***

## CERTIFICATE OF SERVICE

I certify that on September 5, 2024, I electronically transmitted this response to the Clerk of the Court using the Court's ECF System. I further certify that counsel of record for Appellants is being served with a copy of this response by electronic means via the Court's ECF system, as follows:

Curt C. Hesse
*curt@mooreandassociates.net*
Melissa Moore
*melissa@mooreandassociates.net*
MOORE & ASSOCIATES
440 Louisiana Street, Suite 1110
Houston, Texas 77002-1055

**Counsel for Appellants**

*/s/ Levon G. Hovnatanian*
Levon G. Hovnatanian

## CERTIFICATE OF COMPLIANCE

1.    This response complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) because it contains 3,893 words.

2.    This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point font.

*/s/ Levon G. Hovnatanian*
Levon G. Hovnatanian
September 5, 2024